**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CATHERINGE J. LOUDON,

    Plaintiff,

v.

HEALTHSOUTH CORPORATION and K.C.
REHABILITATION HOSPITAL, INC. d/b/a
MID AMERICA REHABILITATION
HOSPITAL

    Defendants.

Case No. 16-2713-JAR-GEB

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants HealthSouth Corporation ("HealthSouth") and K.C. Rehabilitation Hospital, Inc., d/b/a Mid America Rehabilitation Hospital's ("MARH") Motion to Dismiss (Doc. 6). The motion is fully briefed and the Court is prepared to rule. For the reasons explained in detail below, the Court grants in part and denies in part Defendants' motion to dismiss. The motion is granted as unopposed as to Defendant HealthSouth and denied as to MARH.

**I.    Factual Background**

The following facts are alleged in Plaintiff's Complaint and assumed to be true for purposes of this motion. Plaintiff was employed by Defendant MARH as the Director of Human Resources. Troy Dedecker, CEO of MARH, directly supervised Plaintiff. Plaintiff was terminated from her job as Director of Human Resources on February 25, 2015.

During the final months of Plaintiff's employment, Mr. Dedecker directed Plaintiff not to suspend a male harasser ("JK") after a female employee ("LO") complained of sexual harassment by JK. Plaintiff told Mr. Dedecker she did not agree with this decision because

during similar investigations, she had suspended the alleged harasser. LO was upset with Plaintiff for not terminating JK and contacted Mr. Dedecker, calling the situation an "assault" for the first time. Mr. Dedecker contacted corporate Human Resources, which he had previously told Plaintiff not to do; and, corporate Human Resources wanted to know why they had not been contacted immediately once a claim of sexual harassment had been made.

Mr. Dedecker also instructed Plaintiff to terminate LO three times. Plaintiff refused Mr. Dedecker's request due to lack of evidence.

Plaintiff alleges Mr. Dedecker assaulted a female employee, DW, in her presence. Further, she alleges Mr. Dedecker tried to downplay the incident and wanted Plaintiff to do the same.

Plaintiff also expressed concerns to Mr. Dedecker about salary inequity among employees based on gender and race.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2015, claiming discrimination based on race and sex, and retaliation. On July 20, 2016, the EEOC issued Plaintiff a Notice of Right to Sue letter. Plaintiff filed her Complaint with this Court on October 18, 2016.

## II. Standard

Fed. R. Civ. P. 12(b)(6) provides a vehicle for a party to challenge the legal sufficiency of a claim. The requirements underlying the legal sufficiency of a claim stem from Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[1]

---

[1] Fed. R. Civ. P. 8(a).

To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[2] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[4] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9] "A claim has facial plausibility when the plaintiff pleads factual content

---

[2]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7]*Id.*

[8]*Id.* at 679.

[9]*Id.*

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

**III. Discussion**

Plaintiff alleges claims of retaliation against Defendants under Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. The protections of Title VII apply only to discrimination against an employee by that person's employer.[11] Section 1981 prohibits race discrimination in making and enforcing contracts,[12] including employment contracts.[13] Plaintiff concedes that she is not employed by HealthSouth, and that her claims against HealthSouth should be dismissed without prejudice. Therefore, the Court proceeds to consider whether Plaintiff has stated viable claims of retaliation against MARH.

While a plaintiff does not need to establish a *prima facie* case of retaliation to survive a Rule 12(b)(6) motion, courts examine the elements of a *prima facie* case of retaliation to determine whether the plaintiff set forth a plausible claim.[14] The elements of a prima facie claim of retaliation under Title VII and § 1981 are: (1) the employee engaged in protected activity; (2) the employee suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the materially adverse action.[15]

There is no dispute that Plaintiff's termination on February 25, 2015 constitutes an adverse employment action. At issue is whether Plaintiff sufficiently alleged her engagement in

---

[10] *Id.* at 678.

[11] *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014).

[12] 42 U.S.C. § 1981(a); *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265 (10th Cir. 2013).

[13] *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454 (2008) (discussing overlap between Title VII and § 1981).

[14] *See Khalik v. United Air Lines*, 6741 F.3d 1188, 1192 (10th Cir. 2012).

[15] *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015); *see CBOCS West, Inc.*, 553 U.S. at 457 (holding that § 1981 encompasses claims of retaliation).

a protected activity and the causal connection between this protected activity and her termination.

### A. Protected Opposition

Protected activities fall under two categories: participation and opposition.[16] Plaintiff brings her claims under Title VII's "opposition clause." The "opposition clause" makes it unlawful for an employer to retaliate against an employee who communicates a belief that the employer engaged in unlawful employment practices under Title VII.[17] In her Complaint, Plaintiff alleges she engaged in protected opposition by: (1) suspending an alleged male sexual harasser; (2) refusing to terminate the female accuser because she had complained about sexual harassment; (3) reporting and opposing concerns about salary inequities based on gender/sex and race; and (4) refusing Dedecker's directive not to involve corporate human resources.

#### 1. Manager Rule

Defendants first argue that the "manager rule" established by the Tenth Circuit in *McKenzie v. Renberg's, Inc.*[18] dictates that Plaintiff did not engage in protected opposition to discrimination. Under the "manager rule," employees that are required as part of their job duties to report or investigate complaints of discrimination, cannot claim that the reporting or investigating itself is a protected activity under the "opposition clause" because conveying others' discrimination complaints is not the same as opposing unlawful practices.[19] Plaintiff alleges that the "manager rule" is no longer good law because the United States Supreme Court

---

[16] 42 U.S.C. § 2000e-3; *Vaughn v. Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008).

[17] 42 U.S.C. § 2000e-3; *see Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009).

[18] 94 F.3d 1478, 1486–87 (10th Cir. 1996); *see also Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, 192 F. Supp. 3d 1230, 1248 (D. Kan. 2016) (discussing the "manager rule").

[19] *See McKenzie*, 94 F.3d at 1486–87 (holding that personnel director who reported concerns about possible FLSA violations had not engaged in protected opposition).

has since clarified the scope of the opposition clause, explaining that to "oppose" an unlawful employment practice under Title VII, means "to resist or antagonize . . .; to contend against; to confront; resist; [or] withstand."[20] The Court stated that "'[o]ppose' goes beyond 'active, consistent' behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it."[21]

In *Weeks v. Kansas*, the Tenth Circuit declined to address *Crawford*'s effect on the "manager rule" because the plaintiff did not raise this argument during the appellate proceedings or at the district court level, but noted, "[w]hether and how this general standard [for opposition] meshes with *McKenzie* is unclear."[22] The Court reiterated *McKenzie*'s holding that

> to engage in protected opposition [an employee] must . . . 'step outside . . . her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting [Title VII] rights, or otherwise engage in activities that reasonably could be perceived as directed towards, the assertion of right protected by [Title VII].[23]

Other circuits have reached varying determinations as to *Crawford*'s impact on the "manager rule."[24] The Eleventh Circuit limited *Crawford*'s reach, noting that *Crawford* has not foreclosed the manager rule because it "pertained only to whether the reporting of a harassment claim was covered by Title VII when the reporting was solicited rather than volunteered."[25] Accordingly, the Eleventh Circuit found that *Crawford* "did not address whether a disinterested party to a harassment claim could use that harassment claim as its own basis for a Title VII

---

[20] *Crawford*, 555 U.S. at 276 (quoting Webster's New International Dictionary 1710 (2d ed. 1957)).

[21] *Id.* at 277.

[22] 503 F. App'x 640, 643 (10th Cir. 2012).

[23] *Id.* at 642 (quoting *McKenzie*, 94 F.3d at 1486–87 (footnote omitted)).

[24] *See Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, 192 F. Supp. 3d 1230, 1248 (D. Kan. 2016).

[25] *Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787 (11th Cir. 2012).

action."[26] Thus, under the Eleventh Circuit's application of *Crawford*, the "manager rule" still prohibits certain individuals from recovering under Title VII.[27]

The Second Circuit held that under *Crawford*, regardless of whether an employee's job responsibilities involve investigating discrimination complaints, if an employee actively "supports" other employees asserting Title VII rights, personally complains, or criticizes her employer's "discriminatory employment practices," the employee has engaged in a protected activity under the opposition clause.[28] Similarly, the Fourth and Sixth Circuits have rejected the "manager rule" in Title VII retaliation claims.[29] The Fourth Circuit found "that the 'manager rule' has no place in Title VII enforcement" because it runs contrary to the purpose of Title VII by discouraging human resource employees from discussing workplace discrimination issues.[30] The Fourth Circuit agreed with the Sixth Circuit's decision in *Johnson v. University of Cincinnati*, which found that the "manager rule" conflicts with the broad consideration given to retaliation claims, and the "spirit and purpose behind Title VII as a broad remedial measure."[31] Moreover, the Sixth Circuit, relying on the plain language of Title VII's "opposition clause," determined that reasonableness is the only qualification placed on the manner of opposition required for an employee making a Title VII claim against a retaliatory action.[32]

The Court need not decide whether the manager rule survives *Crawford* in the Tenth Circuit because Plaintiff alleges sufficient facts to avoid application of the manager rule in her

---

[26] *Id.*

[27] *Id.*

[28] *Littlejohn v. City of New York*, 795 F.3d 297, 318 (2d Cir. 2015).

[29] *Demasters v. Carilion Clinic*, 796 F.3d 409, 424 (4th Cir. 2015); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579–81 (6th Cir. 2000) (explaining that the only qualifying component of the opposition clause in Title VII claims is that the manner of opposition be reasonable).

[30] *Demasters*, 796 F.3d at 424 (citations omitted).

[31] *Johnson*, 215 F.3d at 580.

[32] *Id.*

Complaint. *McKenzie* suggests that for a manager to engage in opposition, she must go beyond the duties of her role as a company representative and "engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by [Title VII]."[33] Plaintiff's allegations meet this standard. She alleges she refused Dedecker's direction to terminate an alleged victim of sexual harassment because it was inconsistent with her prior actions during sexual harassment investigations, and because she did not believe the evidence supported terminating LO. Such actions go beyond her job responsibilities of simply investigating the complaint and suggest she was critical of her employer's decision, and actively supported LO instead. Plaintiff also alleges that she complained to Dedecker about salary inequities among employees based on race and gender. Again, these allegations suggest Plaintiff went beyond her investigative duties and actively supported other employees' rights under Title VII and § 1981.[34] The manager rule thus does not bar Plaintiff's retaliation claims.

### 2. Personal Grievance

Defendant next argues that the protected opposition alleged in the Complaint consists of mere personal grievances with Dedecker over internal investigation procedures. Courts have established a low bar for plaintiffs to overcome to show engagement in protected opposition to discrimination.[35] Moreover, a clear standard for determining what activity suffices as protected opposition does not exist.[36] To determine whether activity is protected opposition, the court must look at the totality of activity to determine if it opposes discrimination.[37] Activity protected

---

[33] 94 F.3d 1478, 1486–87; *see also Weeks v. Kansas*, 503 F. App'x 640, 642 (10th Cir. 2012).

[34] *Crawford* explicitly considered the refusal "to follow a supervisor's order to fire a junior worker for discriminatory reasons" as protected opposition. 555 U.S. 271, 277 (2009).

[35] *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 274 F. Supp. 2d 1198, 1212 (D. Kan. 2003).

[36] *See id.*

[37] *See id.*

by Title VII, however, cannot "merely take [the] form of complaints about personal grievances," but must instead oppose discrimination prohibited by Title VII.[38]

Plaintiff's complaint contains factual allegations that plausibly demonstrate she engaged in protected opposition to discrimination. While some of Plaintiff's actions occurred in the greater context of an investigation, Plaintiff alleges facts suggesting she did more than complain about the investigation procedure. Specifically, Plaintiff's alleges that, against her supervisor's will, she both suspended an alleged male sexual harasser and refused to terminate the female accuser because she complained about sexual harassment. These allegations represent more than disagreements with protocol and allow for inferences that Plaintiff crossed the line of merely disagreeing with procedures, and that instead she took steps to oppose discrimination.

### 3.    § 1981

As already stated, section 1981 prohibits race discrimination in making and enforcing contracts.[39] Defendants argue that Plaintiff's § 1981 retaliation claim should be dismissed because she does not allege retaliation on the basis of race. The Court disagrees. Plaintiff alleges as one of her four instances of protected activity that she complained to Dedecker about salary discrepancies among employees on the basis of gender and race. And, Plaintiff marked the "race" box on her administrative complaint. The Court finds that Plaintiff has sufficiently alleged retaliation on the basis of opposition to race discrimination to support a claim under § 1981.

### B.    Causation

To establish a causal connection, "a plaintiff making a retaliation claim . . . must establish

---

[38] *Id.*

[39] 42 U.S.C. § 1981(a); *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) ("Although § 1981 does not itself use the word "race," the Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts.").

that his or her protected activity was a but-for cause of the alleged adverse action by the employer," and not merely a motivating factor.[40] This requires as showing "that the [alleged] unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[41] A causal connection between protected activity and adverse action may be shown by temporal proximity if the protected activity and the adverse action occurred so closely situated in time as to give rise to the inference of causation.[42] But, "unless the [adverse action] is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[43] Thus, a time period of three months between protected activity and adverse action is not enough to establish causation, but a period of one and a half months has been held to be enough.[44]

Plaintiff alleged the date of her termination, the adverse action, as February 25, 2015. In her complaint, Plaintiff further alleges that the protective activity she engaged in occurred during the "last months" of her employment. Her reply brief, however, clarifies that while the complaint alleges the incident occurred during the "last months" of employment, the word "month" was incorrectly typed as plural instead of singular. Defendants reply that this allegation is false because the assault involving DW occurred in January 2014, which is over a year before Plaintiff's termination. The Court declines to address this factual dispute as it would require the Court to consider matters outside the pleadings, which is prohibited when considering a motion under Rule 12(b)(6).[45]

---

[40] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

[41] *Id.* at 2533.

[42] *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999).

[43] *Id.* (emphasis in original).

[44] *Ramirez v. Okla. Dep't of Mental Health,* 41 F.3d 584, 596 (10th Cir.1994) .

[45] Fed. R. Civ. P. 12(d).

Even assuming that Plaintiff's protected opposition to the alleged DW assault occurred in 2014, this is only one of four alleged acts of protected opposition. Thus, the Court assumes as true Plaintiff's allegation that at least part of her alleged oppositions to discrimination occurred within the last "months" of her employment. Moreover, Plaintiff alleges that Dedecker terminated her predecessor for failing to follow his directives, which leads to the reasonable inference that Plaintiff's refusal to follow his directives that she believed violated other employees' rights under Title VII and § 1981, caused her termination.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 6) is **granted in part and denied in part**. Defendant HealthSouth is dismissed from this action. Defendants' motion to dismiss is otherwise denied.

**IT IS SO ORDERED.**

Dated: June 6, 2017

                                                    s/ Julie A. Robinson
                                                    JULIE A. ROBINSON
                                                    UNITED STATES DISTRICT JUDGE