# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CATHERINE J. LOUDON,

    Plaintiff,

v.

K.C. REHABILITATION HOSPITAL, INC.,

    Defendant.

Case No. 2:16-cv-02713-HLT

## MEMORANDUM AND ORDER

Plaintiff Catherine Loudon alleges claims for retaliation against her former employer, Defendant K.C. Rehabilitation Hospital, Inc., pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"). Defendant moves for summary judgment on both claims. Doc. 40. Because Plaintiff cannot show that she engaged in the requisite "protected activity" to support her claims for retaliation, the Court grants summary judgment in favor of Defendant on Plaintiff's claims.

## I. BACKGROUND

### A. Plaintiff's Employment

The following facts are uncontroverted or related in the light most favorable to Plaintiff as the nonmoving party. Defendant operates MidAmerica Rehabilitation Hospital ("MARH") in Overland Park, Kansas, which provides specialized inpatient and outpatient care for patients recovering from a variety of conditions and injuries. Doc. 41 ¶¶ 1-2. Defendant hired Plaintiff as MARH's Human Resources Director ("HRD") on December 2, 2013, and Plaintiff served as HRD until her termination. *Id.* ¶¶ 4, 9. As HRD, Plaintiff oversaw all Human Resources office operations at MARH, and her job responsibilities included "plan[ning], organiz[ing] and direct[ing] all

aspects of Human Resources Management," ensuring compliance with company policies and legal aspects of the employee-employer relationship, and "report[ing] questionable situations, concerns, complaints or harassment." *Id.* ¶¶ 11-12. Throughout the course of her employment, Plaintiff reported to Troy DeDecker, MARH's Chief Executive Officer. *Id.* ¶¶ 3, 10.

### B. Salary Equity

During Plaintiff's first two weeks of employment, Plaintiff and DeDecker discussed the issue of pay equity at MARH. *Id.* ¶ 15. DeDecker terminated Plaintiff's predecessor as HRD for creating—and failing to remedy—salary inequity issues among MARH staff. *Id.* ¶¶ 13-14. DeDecker therefore instructed Plaintiff to review employee compensation to identify any inequities. *Id.* ¶ 16.

In the course of her review, Plaintiff discovered instances where non-diverse employees were paid at a higher rate than their diverse colleagues. *Id.* ¶ 20. Plaintiff reported her findings to DeDecker and made recommendations to remedy the inequities. *Id.* ¶¶ 22, 24-26. DeDecker told Plaintiff on various occasions that he "agree[d]" with her findings and "would consider" her proposal. *Id.* ¶¶ 23, 32. Plaintiff brought up the pay equity project with DeDecker four to five additional times over the summer of 2014. *Id.* ¶ 33. Plaintiff felt DeDecker was "annoyed" when she continued to bring up the project, and, during one meeting in October 2014, DeDecker became verbally loud and confrontational. *Id.* ¶¶ 34, 45-46.

In November and December 2014, Plaintiff sent DeDecker the names and proposed salary adjustments for eight employees. *Id.* ¶¶ 47, 49. DeDecker promptly emailed Plaintiff's proposal to his supervisor, recommending his supervisor approve the increases. *Id.* ¶¶ 51-52. DeDecker then forwarded this email to Plaintiff, commenting, "I am hopeful we can get this done. Thank you for

putting the spreadsheet together." *Id.* ¶ 54. The salary increases were ultimately implemented. *Id.* ¶ 55.

### C. Sexual Harassment Investigation

Approximately two months later, on February 2, 2015, a female MARH employee—referred to in the parties' briefing as "LO"—complained to Plaintiff that a male coworker—referred to as "JK"—sexually harassed her. *Id.* ¶ 58. Plaintiff met with DeDecker on the same day to inform him of the complaint and told DeDecker she would investigate the allegations. *Id.* ¶ 59.

During their meeting, Plaintiff and DeDecker discussed what corrective action, if any, needed to be taken. DeDecker asked Plaintiff if MARH could terminate LO's employment. *Id.* ¶ 64. Plaintiff responded that MARH could not terminate LO for filing a complaint and would need to investigate before determining how to proceed. *Id.* ¶ 65. Plaintiff recommended suspending both JK and LO during the pendency of the investigation for a "clean case." *Id.* ¶ 68. DeDecker asked if they could suspend LO but not JK, and Plaintiff advised that hospital policy dictated they suspend the alleged harasser and that suspending only LO could expose MARH to legal action. *Id.* ¶¶ 70-72; Doc. 44 ¶ 170. Plaintiff felt DeDecker was "angry" and "unhappy" with her recommendation. Doc. 41 ¶¶ 73-75. DeDecker directed Plaintiff not to suspend JK. *Id.* ¶ 77. DeDecker also instructed Plaintiff not to contact corporate Human Resources ("Corporate HR") about LO's complaint. *Id.* ¶ 66.

Following her investigation, on February 12, 2015, Plaintiff met with DeDecker to inform him that the investigation was inconclusive. *Id.* ¶ 78. DeDecker asked Plaintiff if MARH could terminate LO's employment for filing a false complaint. *Id.* ¶ 79. When Plaintiff responded that she would not recommend terminating LO—again, due to potential legal ramifications—DeDecker yelled at Plaintiff, stating "this was not the outcome he wanted." *Id.* ¶¶ 80-81. LO was

not terminated and remained employed with MARH for the duration of DeDecker's employment. *Id.* ¶ 82.

Plaintiff also told DeDecker that—because LO might call either the "ethics hotline" or "corporate"—Plaintiff needed to contact Corporate HR to apprise them of the investigation. *Id.* ¶ 87. Although Plaintiff has testified that she was concerned DeDecker would fire her for contacting Corporate HR, in response DeDecker simply told Plaintiff to "be careful." *Id.* ¶ 88; Doc. 44 ¶ 182. Plaintiff subsequently contacted Corporate HR, and Corporate HR asked Plaintiff to send documentation related to her investigation. Doc. 41 ¶¶ 89, 92.

**D. Plaintiff's Termination**

Six days after meeting with DeDecker, on February 18, 2015, Plaintiff provided her written investigation report to DeDecker and Corporate HR. *Id.* ¶ 118. Upon reviewing Plaintiff's report, DeDecker became concerned with the content of the report and inaccuracies in the timeline. *Id.* ¶¶ 119-121. The inaccuracies are summarized as follows:[1]

| Contents of Plaintiff's Investigative Report | Findings of Review |
| --- | --- |
| LO made her sexual harassment complaint to Plaintiff on February 4, 2015. | LO was not scheduled to work on February 4, 2015 and did not clock in, did not use her ID badge to enter MARH, and did not go to the HR office. It appears LO made the initial complaint to Plaintiff on February 2, 2015. |
| LO put a note under Plaintiff's door on February 5, 2015. | LO was not scheduled to work on February 5, 2015, and did not clock in, did not use her ID badge to enter MARH, and did not go to the HR office. |
| JK's brother met with HR on February 10, 2015, at 7:00 a.m. | Plaintiff was not in the building on February 10, 2015, so it appears JK's brother met with Plaintiff's assistant, not Plaintiff. |
| Plaintiff met with LO on February 10, 2015, to discuss the status of the investigation. | LO was not scheduled to work on February 10, 2015, and did not clock in. It appears Plaintiff and LO met on February 11, 2015. |

---

[1] With the exception of minor changes, this chart is identical to the chart set forth in Fact No. 125 of Defendant's Statement of Uncontroverted Material Facts, provided in connection with its Memorandum in Support of its Motion for Summary Judgment (Doc. 41), which was uncontroverted by Plaintiff.

| Contents of Plaintiff's Investigative Report | Findings of Review |
|---|---|
| Plaintiff met with JK on February 11, 2015, at 7:30 a.m. | Plaintiff did not arrive to work on February 11, 2015, until well after 7:30 a.m. MARH video showed Plaintiff and JK walking into the HR office at 7:56 a.m. on February 12, 2015. It appears Plaintiff and JK met on February 12, 2015, at 7:56 a.m. |
| Plaintiff met with LO on February 11, 2015, regarding the results of the investigation. | LO stated she met with Plaintiff on February 12, 2015, regarding the results of the investigation, which is consistent with MARH video. It appears Plaintiff and LO met on February 12, 2015, regarding the results of the investigation. |

*Id.* ¶ 125. Confronted with questions regarding her investigation, Plaintiff admitted the investigative report contained inaccuracies. *Id.* ¶¶ 134-144. Defendant subsequently terminated Plaintiff's employment effective February 25, 2015. *Id.* ¶ 147.

Following her termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2015, claiming gender- and race-based discrimination and retaliation. Doc. 1-1. On July 20, 2016, the EEOC issued Plaintiff a Notice of Right to Sue letter. Doc. 1-2. Plaintiff filed her Complaint with this Court on October 18, 2016, alleging retaliation in violation of Title VII and Section 1981. Doc. 1. Defendant moves for summary judgment on both claims. Doc. 40.

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view "all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could

return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**III. ANALYSIS**

Plaintiff argues her employment was terminated in retaliation for: (1) recommending the suspension of JK following allegations of sexual harassment; (2) refusing to terminate LO following her sexual harassment complaint; (3) refusing DeDecker's directive not to involve Corporate HR in the sexual harassment investigation; and (4) reporting concerns to DeDecker regarding gender- and race-based salary inequities. Doc. 37 at 10. In its motion for summary judgment, Defendant contends none of these actions constitute protected activity sufficient to support Plaintiff's claims. Doc. 41. Defendant further contends that, even if the Court were to find that Plaintiff engaged in the requisite protected activity, these actions were not the reason for her termination, and, rather, Plaintiff was terminated due to her mishandling of, and dishonesty during, the investigation of LO's sexual harassment complaint. *Id.*

Unless a plaintiff supplies direct evidence of retaliation, a court must analyze the plaintiff's claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] First, the plaintiff must establish a prima facie case of retaliation. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). "The burden at this stage is 'not onerous.'" *Id.* (quoting *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)). To prove a prima facie claim for retaliation under both Title VII and Section 1981, the plaintiff must show: (1) she engaged in protected activity, (2) she suffered a materially adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998

---

[2] Neither party disputes that the *McDonnell Douglas* framework applies here.

(10th Cir. 2011) (finding showing required to establish retaliation is identical under Title VII and Section 1981).

Second, if the plaintiff makes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Tabor*, 703 F.3d at 1216-17. Third, provided the defendant satisfies this second step, the plaintiff will avoid summary judgment only if she can show that the defendant's explanation is mere pretext—that is, that the defendant's asserted reason was not the "true reason" for her termination. *Id.* at 1217-18. The plaintiff can meet this burden by showing: (1) that the defendant's proffered reason is factually false; or (2) that retaliation was a primary factor in the decision, which can be established by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's reason, such that "a reasonable fact finder could deem [the defendant's] reason unworthy of credence." *Id.* at 1218 (internal quotations omitted). Speculation that an explanation is pretext is insufficient, as is evidence that the employer was mistaken or used poor business judgment—it does not matter whether the proffered reason was "wise, fair or correct." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007). Rather, the relevant inquiry is whether the employer honestly believed those reasons and acted in good faith upon its beliefs. *Swackhammer*, 493 F.3d at 1170.

### A. Retaliation Under Title VII

#### 1. Prima Facie Case

The parties do not dispute that Plaintiff's termination constitutes a material adverse employment action, satisfying the second element of her prima facie case. The parties <u>do</u> dispute whether Plaintiff engaged in protected activity sufficient to satisfy the first element of her claims,

and, if so, whether there was a causal connection between the protected activity and Plaintiff's termination sufficient to satisfy the third element.

Protected activities fall into two categories: participation and opposition. *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008). Plaintiff brings her claim under Title VII's opposition clause, which prohibits an employer from retaliating against an employee who communicates a belief that the employer engaged in unlawful employment practices. *Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, 192 F. Supp. 3d 1230, 1247 (D. Kan. 2016). Under the "manager rule," employees required as part of their job duties to report or investigate complaints of discrimination cannot claim that such reporting or investigating itself is a protected activity under the opposition clause because conveying another's discrimination complaint is not the same as opposing unlawful practices. *Id.* at 1248. Put simply, an employee cannot use the performance of her job duties as a basis for protected activity. *Robinson v. Wichita State Univ.*, 2018 WL 836294, at *3 (D. Kan. 2018). In her capacity as HRD, therefore, for Plaintiff to have engaged in protected activity, she must have "stepped outside" her role of representing Defendant and either filed—or threatened to file—an action adverse to Defendant, actively assisted other employees in asserting their Title VII rights, or otherwise engaged in "activities that reasonably could be perceived as directed towards the assertion of rights protected by [Title VII]." *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996).[3]

---

[3] The parties disagree regarding the impact of the Supreme Court's holding in *Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee*, 555 U.S. 271 (2009), on the manager rule in this Circuit. In *Crawford*, the Supreme Court suggests that to oppose an unlawful employment action under Title VII broadly means "[t]o resist or antagonize . . . ; to contend against; to confront; resist; withstand." 555 U.S. at 276. Circuits are divided regarding *Crawford*'s effect, if any, on the application of the manager rule. *Loudon v. HealthSouth Corp.*, 2017 WL 2440276, at *3 (D. Kan. 2017). Post-*Crawford*, the Tenth Circuit declined to address *Crawford*'s impact. *Weeks v. Kansas*, 503 F. App'x 640, 643 (10th Cir. 2012) ("Whether and how [the standard enunciated by *Crawford*] meshes with *McKenzie*'s preexisting and more particular rule for retaliation claims . . . is not clear."). However, the Tenth Circuit reiterated that "[t]o engage in protected opposition [an employee] must . . . 'step outside . . . her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting [Title VII] rights, or otherwise engage in activities that

Plaintiff identifies four separate acts that she argues constitute protected activity under Title VII: (1) recommending the suspension of JK following allegations of sexual harassment; (2) refusing to terminate LO following her sexual harassment complaint; (3) refusing DeDecker's directive not to involve Corporate HR in the sexual harassment investigation; and (4) reporting concerns to DeDecker regarding gender- and race-based salary inequities. The Court addresses each of these actions in turn.

### a. Recommending suspension of JK

First, Plaintiff claims that she engaged in protected activity under Title VII by recommending the suspension of JK to her supervisor, DeDecker. The undisputed evidence, however, shows that, in recommending the suspension of JK, Plaintiff was merely discharging her duties as HRD and never "stepped outside" her role so as to engage in protected activity. As HRD, Plaintiff's responsibilities included planning, organizing, and directing all aspects of Human Resources Management, ensuring compliance with company policies and legal aspects of the employee-employer relationship, and reporting questionable situations, concerns, complaints, or harassment. Doc. 41 ¶¶ 11-12.

As part of her job, Plaintiff reported LO's complaint to DeDecker. *Id.* ¶ 59. Plaintiff and DeDecker proceeded to discuss what, if any, corrective action needed to be taken in the wake of LO's complaint. Plaintiff recommended suspending both JK and LO during the investigation for a "clean case." *Id.* ¶ 68. DeDecker asked if they could suspend LO but not JK, and Plaintiff advised that hospital policy dictated they suspend the alleged harasser and that suspending only LO could expose MARH to legal action. *Id.* ¶¶ 70-72; Doc. 44 ¶ 170. DeDecker then directed Plaintiff not

---

reasonably could be perceived as directed towards the assertion of rights protected by [Title VII].'" *Id.* at 642 (citing *McKenzie*, 94 F.3d at 1486-87). In the absence of any holding to the contrary, the Court finds that the manager rule, as described in *McKenzie* and *Weeks*, remains the law in this Circuit.

to suspend JK. Doc. 41 ¶ 77. Plaintiff has not alleged that she suspended JK or otherwise defied DeDecker's directive.

In recommending the suspension of JK, Plaintiff did not assert any rights under Title VII and was merely discharging her everyday duties as HRD by reporting LO's complaint and advising DeDecker on compliance with hospital policy. Plaintiff never crossed the line from performing her job as HRD to asserting a right adverse to Defendant. Precedent dictates that, for a human resources manager to engage in protected activity, she must do more than simply perform her job responsibilities. Plaintiff has not shown that she engaged in protected activity by recommending JK's suspension.

### b. Refusing to terminate LO

Second, Plaintiff argues that her refusal to terminate LO following LO's sexual harassment complaint constituted protected activity. The undisputed facts show that, after Plaintiff reported LO's complaint to DeDecker, DeDecker asked Plaintiff if MARH could terminate LO's employment. *Id.* ¶ 64. Plaintiff advised DeDecker that MARH could not terminate Plaintiff for filing a complaint, and that she would need to investigate before determining how to proceed. *Id.* ¶ 65. Plaintiff's investigation was ultimately inconclusive, and DeDecker again asked Plaintiff if MARH could terminate LO's employment. *Id.* ¶¶ 78-79. Plaintiff responded that she would not recommend terminating LO, due to potential legal ramifications. *Id.* ¶¶ 80-81. LO was not terminated and remained employed with MARH for the duration of DeDecker's employment. *Id.* ¶ 82.

Again, in advising DeDecker on his termination question, Plaintiff was simply performing her duties as HRD. Moreover, the undisputed factual record shows that DeDecker merely asked <u>if</u> MARH could terminate LO. And, when Plaintiff advised that she would not recommend

10

terminating LO, DeDecker apparently heeded her advice—LO was not terminated and, indeed, remained employed by MARH throughout the rest of DeDecker's employment. DeDecker never gave Plaintiff a directive to terminate LO. Likewise, Plaintiff never filed (or threatened to file) an action adverse to Defendant, actively assisted LO in asserting her Title VII rights, or otherwise engaged in activities that reasonably could be perceived as directed towards the assertion of protected rights. Plaintiff has not shown that she engaged in protected activity in advising against the termination of LO.

### c. Refusing directive not to involve Corporate HR

Third, Plaintiff alleges she engaged in protected activity by refusing a directive from DeDecker not to involve Corporate HR in the sexual harassment investigation. After Plaintiff informed DeDecker that she would need to investigate LO's complaint, DeDecker instructed Plaintiff not to contact Corporate HR. *Id.* ¶ 66. At the conclusion of her investigation, Plaintiff told DeDecker that she needed to contact Corporate HR to apprise them of the investigation because LO might call either the "ethics hotline" or "corporate." *Id.* ¶ 87. In response, DeDecker told Plaintiff to "be careful"—there is no evidence that DeDecker told Plaintiff not to call at this point. *Id.* ¶ 88. Plaintiff subsequently contacted Corporate HR. *Id.* ¶¶ 89, 92.

Plaintiff did not engage in any protected activity by contacting Corporate HR regarding the investigation because Plaintiff did not contact Corporate HR in an effort to oppose discrimination. Plaintiff contacted Corporate HR only because she expected LO to contact Corporate HR, and Plaintiff wanted Corporate HR to be aware of the investigation. And, in contacting Corporate HR, Plaintiff was simply discharging her duties as HRD by informing Corporate HR of LO's complaint and the ensuing investigation. She never crossed the line from performing her job to asserting a

right adverse to Defendant. Plaintiff's third proposed basis for protected activity under Title VII likewise fails.

### d. Reporting concerns regarding salary inequities

Fourth, Plaintiff argues that she engaged in protected activity under Title VII by reporting concerns to DeDecker regarding salary inequities based on gender and race. The uncontroverted evidence shows that, during Plaintiff's first two weeks of employment, DeDecker directed Plaintiff to review employee compensation for any salary equity issues. *Id.* ¶¶ 15-16. During Plaintiff's review, she identified certain gender- and race-based inequities, promptly brought them to DeDecker's attention, and made recommendations to remedy the inequities. *Id.* ¶¶ 20, 22, 24-26. Plaintiff followed up with DeDecker four to five additional times over the summer of 2014 and, although Plaintiff testified she felt DeDecker was "annoyed" and angry when she continued to bring up the project, DeDecker forwarded Plaintiff's proposal to his supervisor, recommended his supervisor approve the proposed salary adjustments, and thanked Plaintiff for her work. *Id.* ¶¶ 33-34, 45-46, 51-52, 54. The salary increases were ultimately implemented. *Id.* ¶ 55.

Again, in investigating and reporting salary inequity issues at MARH, Plaintiff was simply discharging a responsibility of her job—one that DeDecker himself instructed her to do. Plaintiff never crossed the line from performing her job as HRD to asserting a right adverse to Defendant. She never filed, or threatened to file, an action adverse to Defendant, actively assisted employees in asserting their Title VII rights, or otherwise engaged in activities that reasonably could be perceived as directed towards the assertion of rights protected by Title VII. Plaintiff has not shown that she engaged in protected activity by reporting her concerns regarding salary inequities.

## 2. Pretext

Because Plaintiff failed to establish a prima facie case, summary judgment is appropriate. But, even assuming Plaintiff could establish all of the elements of her prima facie case, Plaintiff's claim fails for the additional reason that Defendant has proffered a legitimate, nondiscriminatory reason for her termination, and Plaintiff has not shown that Defendant's explanation is pretext. Defendant contends that Plaintiff was terminated due to her mishandling of, and dishonesty during, the sexual harassment investigation. In response, Plaintiff points to various inconsistencies that she claims show that Defendant's proffered reason is pretext—including DeDecker's "changing explanations" for his decision to terminate Plaintiff—and also takes issue with Defendant's refusal to consider evidence that Plaintiff was not lying in her report. Doc. 44 at 28-29.

The uncontroverted evidence supports Defendant's proffered reason for Plaintiff's termination, and Plaintiff's evidence is insufficient to create a genuine issue of material fact as to pretext. First, Defendant is consistent in its concerns regarding Plaintiff's investigation and the reasons for her termination. The undisputed evidence shows that DeDecker became concerned with the content of Plaintiff's report immediately upon reviewing the report. Doc. 41 ¶¶ 119-121. And when DeDecker brought the inconsistencies to Plaintiff's attention, she admitted that the report was inaccurate, and she was subsequently terminated. *Id.* ¶¶ 134-144, 147. Second, Defendant was entitled to rely on its business judgment in making the termination decision. Plaintiff's argument is essentially that she disagrees that the inaccuracies in her report (which, again, she concedes, *see supra* Part I.D) justified her termination. Whether Defendant's proffered reason was fair or correct is immaterial, however, so long as Defendant honestly believed its reason and acted in good faith upon its beliefs. *Swackhammer*, 493 F.3d at 1169-70.

The alleged inconsistencies raised by Plaintiff are simply too minor to give rise to an inference of pretext. *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1402 (10th Cir. 1988) (concluding instances of alleged contradictions and inconsistencies were too insubstantial to allow a reasonable jury to infer pretext). Although inferences are to be resolved in favor of the plaintiff, a court "is 'not required to evaluate every <u>conceivable</u> inference which can be drawn from evidentiary matter, but only reasonable ones.'" *Id.* at 1401 (quoting *Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1218 (7th Cir. 1985)). Plaintiff has not shown that Defendant's proffered reason is factually false, nor has she shown such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that a reasonable fact finder could determine Defendant's reason lacks credibility. *Tabor*, 703 F.3d at 1218. For this additional reason, summary judgment is proper on Plaintiff's claim for retaliation in violation of Title VII.

**B. Retaliation Under Section 1981**

Plaintiff also asserts a claim for retaliation under Section 1981, which is subject to the same *McDonnell Douglas* burden-shifting framework as her claim under Title VII. *Thomas*, 803 F.3d at 514 (analyzing Section 1981 retaliation claim under *McDonnell Douglas* framework). Section 1981 prohibits race discrimination in making and enforcing contracts, including employment contracts. *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265 (10th Cir. 2013); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 454 (2008). In this case, Plaintiff claims she was terminated after expressing concerns to DeDecker regarding salary inequity among employees based on race.[4]

---

[4] Plaintiff's allegations are unclear regarding the exact basis for her Section 1981 retaliation claim, and—although Plaintiff clarifies in her opposition that her Section 1981 claim relates only to her allegation that she opposed <u>race-based</u> salary inequities (Doc. 44 at 25)—to the extent Plaintiff relies upon allegations unrelated to race-based discrimination as a basis for her Section 1981 claim, the claim fails as a matter of law as it pertains to those allegations. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 n.3 (10th Cir. 1993) (dismissal of Section 1981 claims was proper because Section 1981 "does not apply to sex . . . discrimination").

Defendant is entitled to summary judgment on Plaintiff's Section 1981 claim for two separate reasons.

First, Plaintiff fails to address Defendant's arguments in favor of summary judgment on her Section 1981 claim. By failing to respond to Defendant's arguments, Plaintiff has abandoned this claim. *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (affirming district court's ruling that plaintiff abandoned claim by failing to address it in response to motion for summary judgment); *Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (finding plaintiffs abandoned claims by failing to "seriously address them" in their appellate brief). Summary judgment in favor of Defendant on Plaintiff's Section 1981 claim is warranted on this basis alone.

Second, even if Plaintiff had not abandoned this claim, the claim still fails because Plaintiff cannot meet her initial burden to establish a prima facie case for retaliation under Section 1981. Plaintiff's conduct during her work on the pay equity project did not constitute protected activity. *See supra* Part III.A.1.d. Because Plaintiff has not carried her burden of establishing a prima facie case for retaliation under Section 1981, the Court need not proceed with the remainder of the *McDonnell Douglas* test. However, for the reasons discussed in Part III.A.2, *supra*, even if Plaintiff had established a prima facie case, she cannot rebut Defendant's legitimate, nondiscriminatory reason for her termination. The Court accordingly finds that summary judgment is proper on Plaintiff's claim for retaliation in violation of Section 1981.

IV. **CONCLUSION**

IT IS THEREFORE ORDERED BY THE COURT that Defendant's Motion for Summary Judgment (Doc. 40) is GRANTED. The Court GRANTS summary judgment in favor of Defendant on Plaintiff's claims for retaliation under Title VII and 42 U.S.C. § 1981.

IT IS SO ORDERED.

Dated: September 20, 2018

                                     /s/ *Holly L. Teeter*
                                     HOLLY L. TEETER
                                     UNITED STATES DISTRICT JUDGE